### CASEIN CO. OF AMERICA v. VAN DAM.

(Circuit Court of Appeals, Second Circuit. February 16, 1909.)

#### No. 170.

SALES (§ 77*) — CONSTRUCTION OF CONTRACT — PRICE — ASCERTAINMENT UNDER PROVISIONS OF CONTRACT.

Plaintiff entered into a contract to sell to a company all of his product of dried curd for five years at a price to be fixed on the 1st of January of each year, to be not less than four cents per pound, and equal to the highest price which should be paid by the purchaser to any other party for like product. The purchaser, which did a local business only, sold its business and assigned its contracts, about 40 in number, to defendant. which was a large concern doing business in several states. *Held*, that the contract entitled plaintiff only to the highest price paid under the contracts so assigned and assumed, although defendant may have paid a higher price at other points and under different conditions.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 208; Dec. Dig. § 77.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Eastern District of New York.

This cause comes here on writ of error to review a judgment of the Circuit Court, Eastern District of New York, entered upon the verdict of a jury in favor of defendant in error, who was plaintiff below. He sued as assignee of Ayer & McKinney, manufacturers of butter and other products of milk in Delaware county, N. Y. Since no point is raised as to the assignment, both assignors and assignee will be hereinafter referred to as the plaintiff.

George J. Gillespie (William F. Delaney, of counsel), for plaintiff in error.

Howard R. Bayne, for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

PER CURIAM. The action is founded on a contract, dated January 24, 1899, between Ayer & McKinney and "M. R. Isaacs and F. L. Schwerin, trading as the Quaker City Chemical Company of Philadelphia." By its terms Ayer & McKinney were to sell and deliver to the Quaker City Company all their products of skim milk, to be converted into dried cheese, for a period of five years from date, "at the price of four cents per pound f. o. b. cars for the first year, with the understanding that the price for each subsequent year shall be adjusted on the first of January of that year, that it be not less than four cents, as herein stated, for any year and shall be equal to the highest price which the Quaker City Chemical Company are paying to any other party for a like product." The parties further agreed that "all the conditions and terms of this contract shall be binding and extend to their heirs, executors, administrators and assigns, unless altered by mutual consent."

On June 7, 1901, Ayer & McKinney were notified by the Quaker City Company that they had assigned all their contracts to the Casein Company of America (the defendant), and were requested to continue shipping the dried curd and to bill the same to the Casein Company. The Casein Company had bought a controlling interest in the stock of the Quaker City. Plaintiff continued the shipments, and the defendant paid for all so delivered on the basis of five cents a pound, which was the price paid to plaintiffs by the Quaker City Company prior to the assignment of the contract to the Casein Company. Plaintiff sued and recovered on the theory that the Casein Company had, during the later years of the contract, paid 5¾ cents for some of the casein which it purchased from other producers, plaintiff contending that under the contract he was entitled to be paid at that rate.

The fundamental question in the case is, what meaning shall be given to the clause "equal to the highest price which the Quaker City Chemical Company are paying to any other party"? Shall it be construed literally, or shall it be broadened so as to cover the highest price paid anywhere by the Casein Company? The Quaker City Company was a local concern doing a small business under about 40 contracts; the Casein Company did a large business in several different

states, where presumably conditions vary, and had about 400 outstanding contracts.

It should be noted that upon buying out the Quaker City Company the Casein Company did not terminate or abrogate its contracts for the purchase of curd; it took them all over and carried them out. As the witness expressed it:

"There were about 40 contracts. The Casein Company continued to receive the curds shipped under those contracts; the Casein Company and the persons with whom the contracts were made proceeded to buy and sell the product."

Upon this state of facts we are of the opinion that the contract should be construed so as to carry out the evident intent of the parties, and to secure to the seller only the highest price paid under Quaker City contracts. The evidence shows that this did not exceed five cents.

The motion to dismiss at the close of the whole case expressly raised the point that the purchases made by the Casein Company under other contracts were not to be considered in fixing the price. Exception was duly reserved.

The judgment is reversed.